UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE HALL,

       Plaintiff,                                       Hon. Janet T. Neff

v.                                                      Case No. 1:11 CV 416

MIKE MARTIN, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on the Motion for Summary Judgment, (dkt. #15), brought by Defendants Burrel, Straub, and Martin. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted**.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint. Plaintiff is incarcerated at the Lakeland Correctional Facility, part of the Michigan Department of Corrections (MDOC). Plaintiff is "a practicing Messianic Jew." The Lakeland facility, however, does not offer religious services specifically for adherents of this particular faith. On January 8, 2010, Plaintiff "submitted a request for Messianic Judaic Services." After receiving no response, Plaintiff submitted another such request on April 4, 2010, describing "why neither Rabbinic Jewish nor Christian services met the needs of Messianic Jews." On January 3, 2011, Plaintiff was informed that his request had been denied. Specifically, Chaplain Onesiphorus Burrel, Father Andrew Lowe, and Special Activities Coordinator

Michael Martin recommended that Plaintiff's request be denied. This recommendation was adopted by Deputy Director Dennis Straub.

On April 25, 2011, Plaintiff initiated the present action against Martin, Straub, Burrel, and Lowe. Plaintiff alleges that the denial of his request for Messianic Jewish services violates his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA). Plaintiff seeks injunctive relief with respect to his RLUIPA claim and monetary relief on his First Amendment claim. Defendants Martin, Straub, and Burrel now move for summary judgment.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by

admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*,

270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.      RLUIPA**

In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). While RLUIPA does not define the phrase "substantial burden," the Sixth Circuit has indicated that such must be interpreted "in line with the Supreme Court's 'Free Exercise' jurisprudence, which suggests that a 'substantial burden' is a difficult threshold to cross." *Living Water Church of God v. Charter Township of Meridian*, 225 Fed. Appx. 729, 736 (6th Cir., Dec. 10, 2007). In this sense, the *Living Water* court observed that:

> while the Supreme Court generally has found that a government's action constituted a substantial burden on an individual's free exercise of religion when that action forced an individual to choose between "following the precepts of her religion and forfeiting benefits" or when the action in question placed "substantial pressure on an adherent to modify his behavior and to violate his beliefs," it has found no substantial burden when, although the action encumbered the practice of religion, it did not pressure the individual to violate his or her religious beliefs.

*Id.* at *5 (internal citations omitted).

The Sixth Circuit has subsequently concluded that a challenged prison policy did not violate RLUIPA where such did not "place[] substantial pressure on an inmate to violate his or her religious beliefs or effectively bar an inmate from exercising his religion." *Coleman v. Governor of State of Michigan*, 413 Fed. Appx. 866, 875-76 (6th Cir., Mar. 16, 2011); *see also, Marshall v. Frank*, 2007 WL 1556872 at *5 (W.D. Wis., May 24, 2007) (to come within the scope of RLUIPA the burden in question must render religious exercise "effectively impracticable"); *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise); *Konikov v. Orange County, Florida*, 410 F.3d 1317, 1323 (11th Cir. 2005) (a burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise"). These conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial." *See Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003).

While Plaintiff bears the burden to establish that his ability to exercise his religion has been substantially burdened, *see Kaufman v. Schneiter*, 474 F.Supp.2d 1014, 1025 (W.D. Wis. 2007), he has failed to establish that the refusal by prison officials to offer group worship services to adherents of the Messianic Jewish faith constitutes a substantial burden on his ability to practice his religion.

While Plaintiff has presented evidence that lack of group worship is unsatisfactory, he has failed to establish that such has compelled him to violate his religious beliefs or effectively prevented him from practicing his religion. As the Sixth Circuit has observed, while denial of group worship services may make a prisoner's "practice of his religion somewhat more difficult," such does not constitute a substantial burden. *See Marsh v. Granholm*, Case No. 07-2450, Opinion (6th Cir., July 31, 2008). Moreover, even if Plaintiff were able to establish that his ability to practice his religion has been substantially burdened, the result is the same as Defendants have established that the decision not to permit group services for Plaintiff's religion "constitutes the least restrictive means of furthering a compelling governmental interest."

When examining whether a challenged action satisfies this standard, the Court must accord "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Id.* at 875. As the Supreme Court has observed:

> We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety. Our decisions indicate that an accommodation must be measured so that it does not override other significant interests. . .We have no cause to believe that RLUIPA would not be applied in an appropriately balanced way, with particular sensitivity to security concerns. While the Act adopts a "compelling governmental interest" standard, "[c]ontext matters" in the application of that standard. Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions. They anticipated that courts would apply the Act's standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources."

*Cutter v. Wilkinson*, 544 U.S. 709, 722-23 (2005) (internal citations omitted).

In support of the present motion for summary judgment, Defendants have submitted an affidavit executed by Defendant Michael Martin, the Special Activities Coordinator for the Michigan Department of Corrections. (Dkt. #16, Exhibit C). Martin asserts that while the MDOC permits each general faith group to conduct group worship services, it "does not accommodate sects, denominations, or sub-groups within the larger faith groups." According to Martin, this "approach to congregant worship is required by time, space, financial, and staffing limitations in prison facilities." Because "custody staff members must supervise all religious services [and] [s]ince all faith groups have multiple denominations, sects, and sub-groups, it is simply not possible to accommodate all these sub-groups with adequate staff, space, and time, given MDOC's limited resources." Practitioners of the Messianic Jewish faith may attend Christian or Jewish worship services and "may also practice their faith privately, receive religious literature unique to Messianic Judaism, receive clergy visits from Messianic Jewish clergy, and possess[] the personal religious property" associated with their faith. *Id.* Plaintiff has submitted no evidence refuting Martin's assertions.

Diverting limited prison resources to supervise the group worship services of every religious denomination, sect and sub-group implicates legitimate security concerns. Controlling prison costs is likewise a compelling governmental interest. *See, e.g., Via v. Wilhelm*, 2011 WL 5419709 at *6 (W.D. Va., Nov. 9, 2011). Moreover, as Defendant Martin asserts, Plaintiff is afforded many other avenues and opportunities to practice his faith. The Court concludes, therefore, that Defendants' actions constitute the least restrictive means of furthering a compelling governmental interest. Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted as to Plaintiff's RLUIPA claim.

**II.        First Amendment**

Plaintiff asserts that the decision by prison officials to not grant his request for group worship services violates his First Amendment right to freely exercise his religion.

As the Supreme Court has observed, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution"). Thus, while "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates nevertheless retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987). However, "simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations," *Wolfish*, 441 U.S. at 545, as operating a jail is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85.

Accordingly, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish*, 441 U.S. at 547); *see also*, *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997) (issues involving prison administration are properly resolved by prison officials, and the solutions at which they arrive should be accorded deference).

When reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights. *See Turner*, 482 U.S. at 85. The standard by which this balancing occurs was articulated by the *Turner* Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Flagner*, 241 F.3d at 481 (quoting *Shabazz*, 482 U.S. at 349). The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

1. there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. whether there are alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Turner*, 482 U.S. at 89-91.

Failure to satisfy the first factor renders the regulation unconstitutional, without regard to the remaining three factors. If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest. It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable

alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484.

The Court finds that there exists a genuine dispute as to whether Defendants' conduct violated Plaintiff's First Amendment rights. To establish a violation of his right to freely practice his religion, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, 1997 WL 428903 at *2 (6th Cir., July 30, 1997) ("sincerely held religious beliefs require accommodation by prison officials"). Plaintiff's religious beliefs "need not be acceptable, logical, consistent or comprehensible to others in order to merit First Amendment protection." *Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 714 (1981). However, "[o]nly beliefs rooted in religion are protected by the Free Exercise Clause." *Id.* at 713. Plaintiff has submitted sufficient evidence to create a genuine dispute regarding this aspect of the analysis. Nevertheless, consideration of the *Turner* factors persuades the Court that Defendants' conduct was proper.

As discussed above, Plaintiff's request for group worship services was denied because of the impact that such would have upon prison security and resources. As maintaining prison security and maximizing limited resources constitute legitimate governmental interests, the first prong of the analysis is satisfied. As Defendant Martin asserted in his affidavit, Plaintiff is able to practice his faith in other ways. Moreover, permitting group worship services for every religious denomination, sect and sub-group would jeopardize prison security and tax already limited prison resources. Finally, Plaintiff

has failed to identify any alternative to group worship services that does not impose more than a *de minimis* impact on the legitimate government objectives motivating the challenged decision. *See Bazzetta v. Overton*, 539 U.S. 126, 136 (2003). In sum, evaluation of these factors weighs in Defendants' favor. Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted as to Plaintiff's First Amendment claim.

### III.      Defendant Lowe

Plaintiff's allegations against Defendant Lowe mirror those asserted against Defendants Martin, Straub, and Burrel. While Defendant Lowe has not joined the present motion for summary judgment, the Court concludes that if Defendant Lowe were to do so, he would be entitled to relief for the reasons articulated herein. Accordingly, in conjunction with this Report and Recommendation, the Court will issue an Order directing Defendant Lowe that if he wishes to join the present motion for summary judgment he must do so within five days of the date of such order.

**CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (dkt. #15), be **granted**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: March 15, 2012   /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge